## Johnson et al. v. May et al.

May 7, 1948.

Lewis A. White and Howard C. Hadden for appellants.

J. A. Richards and Roger A. Byron for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER— Affirming.

This is the second appeal in this case, which is a contest of a local option election held in Montgomery County September 21, 1946. The election resulted in a 454 vote majority in favor of adopting prohibition. On the former appeal the case was reversed for the error of the trial Court in sustaining a general demurrer to paragraph XIV of appellants' petition. See Johnson et al. v. May et al., 305 Ky. 291, 203 S. W. 2d 37.

The case was tried on the one ground of contest which appeared meritorious on the former appeal, and after hearing the evidence, the contestants' petition was dismissed.

The issue tried was whether or not 838 qualified voters had been illegally purged from the registration lists prior to the election. The Court below found that the County Board of Election Commissioners had substantially complied with the requirements of law relating to purgation; and further found that the votes of some 100 odd voters who had been improperly purged could not have affected the outcome of the election.

For reversal appellants urge three grounds: (1) The Montgomery County Board of Election Commissioners failed to comply with the mandatory provisions of the law regarding procedure for purgation; (2) the Court improperly permitted appellees to introduce proof that those alleged to have been improperly purged were actually not qualified voters, and (3) the Court improperly closed the plaintiffs' case without allowing them the statutory period of seven days in which to introduce rebuttal evidence.

Appellants alleged and introduced substantial evidence to prove that the provisions of the statute relating to purgation of voters were not complied with. Sections 117.541 to 117.544, KRS. It appears from the evidence that there is some question whether or not the County Board of Election Commissioners actually met "for the purpose of passing on the purgation recommendations" within 10 days after the primary election day on April 3, 1946, as required by section 117.544, KRS. It further appears that the Board purged a substantial number of voters from the registration lists without complying with the statute in the following respects: Purgation was not recommended by the judges of the election; no reasons were given for recommended purgations; registration cards on which were stamped "Purgation Recommended" were not signed by the judges of election; and the date of purgation was not marked on the registration cards of any voters whose qualifications are in controversy.

Appellees argue extensively, and the Chancellor decided, that the actions of the local election officers and the Board of Election Commissioners constituted a substantial compliance with the statute. With this proposition we are unable to agree. The statute in clear, brief, and explicit language provides a simple procedure for the purgation of voters. It states precisely the duties of the judges of election and the duties of the County Board of Election Commissioners. These duties and the method of procedure could hardly be misconstrued.

The evidence is convincing that the judges of election and the election commissioners failed to do what the law required to effect a proper purgation of a substantial number of the voters involved. We cannot con-

done this practice in spite of the fact the Chancellor decided that "The standard of compliance was as high as could be expected in this rural community by ordinarily intelligent election officers not especially trained in clerical work." In our opinion the protection of the rights of voters and the fairness of elections require a higher standard of compliance. It thus follows that a great majority of the voters whose rights are here in controversy were not purged according to law. This conclusion, however, does not decide the case.

Coming to appellants' second contention, we find the Chancellor permitted appellees to prove, and they did prove, that of the 838 voters who had been purportedly purged, 603 of these had moved from their precincts and 132 of them had died prior to the last primary election preceding the action of the election commissioners. This left 103 voters whose attempted purgation was not explained.

Appellants strongly argue that it was improper for the Court to admit proof concerning the actual disqualification of the above mentioned voters. We are unable to agree with this contention. The question in the case, as shown clearly by our opinion in the first appeal, was whether or not a free and fair election was held in Montgomery County. The substance of that opinion was that if 800 odd *qualified* voters had been illegally deprived of their right to vote, a free and fair election had not been held. In order to sustain the contest, it must appear that those legally entitled to vote had been wrongfully deprived of that right. The mere fact that their names had been improperly purged from the registration lists does not settle the issue. Registration is simply one qualification. Under section 145 of the Constitution, additional qualifications are residence within the state, county and precinct. An obvious and important qualification is that the proposed voter must be alive and able to vote.

It was, therefore, proper for the Court to allow the introduction of evidence to show that the great majority of voters whose rights are in question did not have the proper qualifications, regardless of the action of the election commissioners in purging their names from the registration lists. It was proved that at least

735 of the 838 voters involved could not legally have voted in this election regardless of the steps taken to purge their names. Consequently their votes cannot be counted in determining whether or not a free and fair election was held.

This then leaves us with no more than 103 voters who might be said to have illegally been deprived of their right to vote. Since the majority for prohibition was 454, even had these persons voted against it, the result of the election would not have been changed. Applying the rule established in Wallbrecht et al. v. Ingram et al., 164 Ky. 463, 175 S. W. 1022, and followed in Mutters v. Allen et al., 296 Ky. 113, 176 S. W. 2d 255, the lower Court would not have been justified in setting aside this election. The result could not have been affected by accepting as actual votes against prohibition the number of voters who may wrongfully have been deprived of their voting rights.

Appellants' final contention is that the Chancellor arbitrarily refused to allow them seven days for the introduction of rebuttal testimony, as provided by statute. Section 122.080, KRS. We see no merit in this contention. At the conclusion of appellees' evidence, the Court asked if appellants had any rebuttal testimony to offer. Their counsel announced that they had no such testimony to offer at that time, but insisted they had the right for seven days to determine whether or not they would come forward with any additional proof. Upon their failure to state that they would offer further evidence, the Court on its own motion declared their case closed. This ruling was not improper. Section 122.080, KRS, provides that in a proceeding of this kind "The judge shall proceed to a trial of the cause without delay." The Court always has the power to exercise a judicial discretion in the conduct of its trials. Here it appeared that appellants would have no further proof to offer. Under such circumstances there was no occasion to longer delay the case.

Even had this action on the part of the Court been improper, there is nothing to indicate that it was prejudicial to appellants. There is not a suggestion in the record that appellants had any more proof, or if so, what would be its nature, or how it might affect the mer-

its of the action. Under such circumstances, if the action of the Court was erroneous, it was harmless.

For the reasons herein stated, the judgment is affirmed.

Chief Justice Sims dissenting.

I am unable to agree with that part of the majority opinion which holds that the trial judge's erroneous ruling refusing to allow appellants the seven days given them by KRS 122.080 to introduce evidence in rebuttal was not prejudicial. These seven days are given them by statute and certainly the trial judge had no right to arbitrarily close the case without allowing them this time merely because the attorneys representing appellants did not then know whether they would introduce evidence in rebuttal. The statute gave them seven days to determine this question. They had until the seventh day to decide whether they would introduce proof in rebuttal and they had the right on that last day to do so, provided they finished with their rebuttal evidence on the seventh day.

It will not do to say that appellants were not prejudiced because they did not move the court to set aside his order and allow them to introduce proof in rebuttal. The court had erroneously taken from appellants a right given them by statute and there was no duty or obligation upon their part to ask him to set aside the order—they had the right to rely upon the statute, and that is what they did.

The majority says the court always has the right to exercise its judicial discretion in the conduct of trials and that KRS 122.080 provides that in this character of case the judge shall proceed without delay. With this I agree. But I do not agree that it is an exercise of judicial discretion when a court refuses to give a litigant the time allowed by statute in presenting his evidence. To proceed without delay does not mean to deprive a litigant of a statutory right. I cannot imagine an act of a court to be more arbitrary than a ruling which says to a litigant, ''The statute gives you seven days to present your rebuttal proof but when you tell me at the close of your opponent's case you do not know whether you have anything in rebuttal to offer, I say the case is

·closed and you have lost your right regardless of the fact the Legislature says you may have seven days.'' When a ruling of the trial judge deprives a party of the time given him by statute to present his case, such party has been prejudiced in his substantial rights.

For the reasons given, I most respectfully dissent.