# May et al. v. Drake.

March 25, 1949.

Tom P. Senff and L. M. Ackman for appellants.

Lewis A. White, John E. Tarrant, Earl S. Wilson and Bullitt, Dawson & Tarrant for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

A local option election was held in Mt. Sterling on September 16, 1948, as authorized by Chapter 47 of the Acts of 1948. (KRS 242.125.) A recount mustered a majority of seven against the sale of alcoholic beverages in the city. This action contesting the election was filed by appellee, a resident and legal voter. By answer appellants set up grounds for a counter-contest. The Court below finally adjudged that a true count of all the legal votes showed a majority of ten favoring the sale of alcoholic beverages in the city. Appellants attack this judgment on several grounds, which will be taken up seriatim.

1. The Constitutionality of Chapter 47, Acts of 1948.

Appellants contend the act violates Sections 51, 59, 60 and 61 of the Constitution. The substance of their argument is (1) the title to the Act is deceptive, and (2) it constitutes special legislation.

The title reads as follows: ''An Act relating to local

option with respect to the sale, barter or loan of alcoholic beverages.'' It provides that elections may be held *in* |*cities of the first four classes* to take the sense of ,the voters with respect to the discontinuance of prohibition which might exist therein as the result of a county wide election. It further provides for separate voting in such cities where county wide elections are held on the question of prohibition. The Act sets out certain mechanics of the election and refers to a number of other statutes which shall, or shall not, be applicable in particular cases. One section and a subsection of two different statutes are specifically amended.

Appellants argue 'the title is deceptive because it does not indicate that a change was being effected in existing local option laws. This contention merits little discussion. Section 51 of the Constitution directs that the subject of an act shall be expressed in the title. The one before us clearly performs that function. A title which gives fair and reasonable notice of the nature of the legislation is adequate. See Johnson, Governor, v. Commonwealth, 291 Ky. 829, 165 S.W.2d 820.

Section 51 also provides that no law shall be revised or amended, by reference to its title only. The statute before us does not attempt to do so. It creates a new law, specifically repeals an existing law, and amends two other statutory provisions by republishing them at length as required by this section of the Constitution. While a change in the general law was effected by the new section, the Constitution does not require that the title contain a reference to inconsistent laws repealed. Bowman v. Hamlet, et al., 159 Ky. 184, 166 S.W. 1008; Graham v. Jewell et al., 204 Ky. 260, 263 S.W. 693; and Johnson, Governor v. Commonwealth, 291 Ky. 829, 165 S.W.2d 820, above cited.

The contention that the Act violates Sections 59, 60 and 61 of the Constitution as being special legislation has been fully answered by the opinion in the case of Board of Trustees v. Scott, etc., 125 Ky. 545, 101 S. W. 944, cited with approval and quoted from in Goodwin v. Anderson, 269 Ky. 11, 106 S.W.2d 152. See also Somsen v. Sanitation District, 303 Ky. 284, 197 S.W.2d 410. We conclude this Act complies with the constitutional requirements.

## 2. The Refusal of the Court to Permit Appellants to Withdraw the Names of Illegal Voters

Appellants in their answer, counterclaim and counter-contest set out the names of a number of persons whom they alleged had voted illegally. It was claimed these voters had voted in favor of the sale of alcoholic beverages in the city, or "wet." After the evidence for both parties had been taken, it appeared that a number of these illegal voters testified they had voted in favor of prohibition, or "dry." When the effect of this evidence became apparent to appellants, they tendered an amended answer withdrawing the names of those illegal voters whose testimony damaged their side. If these names were withdrawn and the illegality of their votes could not be considered by the Court, appellants' counter-contest might have been successful.

At first blush it would appear that ordinary principles of justice would deny the right of a party, by an amended pleading, *effectively to withdraw evidence against him.* That is exactly what appellants proposed to do.

Section 134 of the Civil Code of Practice authorizes a Court to permit amendments "in furtherance of justice" and "if the amendment do (sic) not change substantially the claim or defense." It is a settled principle in this state that either party to an election contest may take advantage of the grounds asserted by his adversary. Drennan v. Roberts, 234 Ky. 574, 28 S.W.2d 735; Everman v. Thomas, 303 Ky. 156, 197 S.W.2d 58; Widick et al. v. Ralston, 303 Ky. 373, 197 S.W.2d 261, 198 S.W.2d 56. In the latter case we recognized that the disqualification of voters named by one party is a ground of which advantage may be taken by his opponent. It follows that either party properly may rely, and continue to rely, upon the established disqualifications of all specifically named voters who are brought into the case by the pleadings.

We do not decide that an amended pleading withdrawing names should not be allowed prior to the introduction of evidence concerning these particular persons; but after such evidence is produced, neither party has the right to legalize a proved illegal vote. In addition, we do not think a Court should permit a procedural

maneuver which would remove from its judicial consideration pertinent facts involved in the controversy. If there is dictum to the contrary in Hodges v. Murray, 240 Ky. 127, 41 S.W.2d 923, we are not inclined to follow it. The Court clearly did not abuse its discretion in refusing to allow this withdrawal of names by amended petition.

3. The Court's Refusal to Permit Appellants to File a Second Amended Answer Presenting an Additional Ground of Contest.

Appellants offered to file an amended answer alleging that the sheriff had failed to comply with the law in advertising the election. This is ordinarily a ground of contest. When the pleading was tendered, the time limit for filing had expired under the specific provisions of KRS 122.070. The Court properly rejected it as a new ground of contest. See Johnson et al. v. May et al., 307 Ky. 399, 211 S.W.2d 135.

Appellants attempt to avoid the rule invoked by suggesting that their pleading stated facts showing the election was void. It appears the order calling the election for September 16, 1948 was entered by the County Judge on July 3, 1948. A copy of this order was published in a Mt. Sterling weekly newspaper the two following weeks, on July 8 and July 15. Printed handbills were also posted later.

KRS 242.040 provides in part: "The sheriff shall have the order published for at least two weeks before the election in a weekly or daily newspaper published in the county."

In Lancaster et al. v. Hamon et al., 153 Ky. 686, 156 S.W. 142, 143, construing a similar statute , the Court recognized that the provision "at least two weeks before the election" relates to the minimum length of time the advertising must be run and does not fix this period of time with relation to the date of election, except that it must be "before." In that case and in the subsequent case of Hall v. Sturgill et al., 305 Ky. 445, 204 S.W.2d 496, it was held the provisions of the statute with respect to publication and posting notice are mandatory, but the provisions regarding the time of such

824

publication and posting are directory only. Since in the present case the statute was complied with in respect to the required manner and length of time for *publica-tion* and *posting* of notices, there was at least a substantial compliance with the law and the election was not void.

4. The Court's Rulings on Individual Voters.

On this appeal appellants raised some questions with respect to eleven voters, concerning either their qualifications or the side to which their votes were charged. Six of these voters were admittedly disqualified and their votes were charged to the "drys." Appellants contend they should have been charged to the "wets" because of suspicious circumstances indicating the voters testified falsely about the way they marked their ballots. There was no evidence of substance, however, concerning these particular voters upon which to base any such conclusion. As the Court below remarked, this case must be tried on the record, and the only proof was that they voted illegally and voted "dry."

As these votes were properly charged to appellant's side, it is unnecessary to consider the other votes about which they raise some question, since deciding in their favor would not change the result of the election. It is also unnecessary to consider appellee's argument that his side was entitled to an additional 21 vote majority.

For the reasons stated, the judgment is affirmed.